UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

Frank Green,

                              Plaintiff,                     VERIFIED COMPLAINT

    -against-                                       07 CIV 6539

The Port Authority of New York and New Jersey,         (VM)
Robert Eadicicco, Tony Caragno, Nicholas Mircovich,
Lela Martin, Cotea Jones, Laurie Price, Tommy Smith,
and Stephanie Lewis-Desire,

                              Defendants.
------------------------------------------------------------------------X

## I.    **NATURE OF ACTION**

1.    This case involves sexual harassment and retaliation for filing complaints. It is brought by Frank Green, a citizen of the United States.  Mr. Green charges that defendants retaliated against him and created a hostile work environment with regard to the terms and condition of his employment for filing charges of sexual harassment on a supervisor in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.,* and for filing a complaint about gambling on the job

## II.    **JURISDICTION**

2.    Jurisdiction is founded on 28 U.S.C. §§§ 1331 and 1343 (1 - 4), and the aforementioned statutory provisions.

## III.    **THE PARTIES**

3.    Plaintiff Frank Green is and was at all times material hereto a citizen of the United States and an employee of the Port Authority of New York and New Jersey, and is a current Tunnel and Bridge Agent (TBA) at the Holland Tunnel.

4.    Upon information and belief, defendant the Port Authority of New York

1

and New Jersey (hereinafter the PA), is an interstate compact entered into by New York and New Jersey in 1921 and approved by Congress of the United States as a government agency as required by the Constitution of the United States.

5. Upon information and belief, that at all times material hereto, the defendant, the PA, its agents, servants and employees operated, maintained and controlled the Holland Tunnel, including employees thereof.

6. Upon information and belief, defendant Robert Eadicicco is and was at all times material hereto an employee of the PA as the general manager at the Holland Tunnel.

7. Upon information and belief, defendant Tony Caragno is and was at all times material hereto an employee of the PA as the assistant manager at the Holland Tunnel.

8. Upon information and belief, defendant Nicholas Mircovich is and was at all times material hereto an employee of the PA as duty manager at the Holland Tunnel.

9. Upon information and belief, defendant Lela Martin is and was at all times material hereto an employee of the Port Authority of new York and New Jersey, as a FS-5 supervisor at the Holland Tunnel.

10. Upon information and belief, defendant Cortea Jones is and was at all times material hereto an employee of the PA as a duty manager of the Holland Tunnel.

11. Upon information and belief, defendant Laurie Price is and was at all times material hereto an employee of the PA as superintendent of tunnel operations at the Holland Tunnel.

12. Upon information and belief, defendant Tommy Smith is and was at all times material hereto an employee of the PA as a duty manager of the Holland Tunnel.

13.     Upon information and belief, defendant Stephanie Lewis-Desire is and was at all times material hereto an employee of the PA as manager of office of equal opportunity in the human resources department.

**AS AND FOR A CAUSE OF ACTION**

14.     Plaintiff has been employed for the PA for 24 years and is currently a tunnel and bridge agent (TBA) for the PA at the Holland Tunnel site.

15.     Upon information and belief, in 2001, defendant Lela Martin became plaintiff's immediate supervisor and they maintained a professional working relationship until June of 2004, when defendant Lela Martin started making comments to the plaintiff about how she likes the way he dresses and inquiring about the names and addresses of plaintiff's social venues off the job, because she had seen him off the job at one time; and she started calling him on the job by phone to send him out for coffee for her and offering to pay for his; and she started delegating her duties to him so that he had to report directly to her; and she would flirt with plaintiff whenever plaintiff was in her presence; this went on for three months.

16.     Upon information and belief, the plaintiff would reject defendant Lela Martin's advances towards him so she began calling him over the PA's radio numerous times a day asking for his location when he would be at the location that's indicated on the assignment sheet that she prepared for the TBA workers; and she would call him to respond to alleged disabled vehicles and obstacles in the roadway that do not exist; and she would interrupt in plaintiff's direct conversations with other coworkers, insinuating that the person is off post by talking to plaintiff; she would also alter plaintiff's work schedule to benefit other coworkers and to agitate plaintiff; and she would assign him to wash vehicles when he was on excess roll call position; then went on through December 2005.

3

17.     Upon information and belief, during the period of July 2004 through September 2004, the plaintiff did make verbal complaints to defendant Cortea Jones, a duty manager at the PA, about defendant Lela Martin's behavior towards him and about the retaliation he was receiving from her because of him not being interested in Ms. Martin's advances; and as a result defendant Cortea Jones would always suggest to plaintiff, "You know she likes you.  Why don't you just do her and get it over with."

18.     Upon information and belief, on or about August 2, 2005, the plaintiff was at his assigned meal break, eating his food in the emergency garage, and was approached by crew chief James Watson who told plaintiff that Lela Martin had called plaintiff over the Pa radio for plaintiff to respond to a detail at Provost cut and that she was standing there with defendants Robert Eadicicco and Tony Carvagno when making the call for plaintiff to respond; at which time plaintiff responded to the crew chief that he was on his meal break and had an half hour more to finish eating, and that he had no radio; and he was then told by the crew chief to wait until 11 am and then respond to the site after his break.

19.     Upon information and belief, at around 10:45 a.m. another TBA employee, Phil Monde, who was allegedly assigned to work at the Provost Cut site, came inside the emergency garage and told plaintiff that defendant Lela Martin wanted plaintiff to respond to the site right now; and plaintiff informed Mr. Monde that he was on his meal break; and then Mr. Monde, standing over the plaintiff who was seated eating, started yelling at the plaintiff that he better go and respond now; then a heated discussion ensued between the two of them because the plaintiff was telling Mr. Monde that he was disturbing his meal break; and after Mr.  Monde and the plaintiff had separated, defendant Martin walked in to find out what the commotion had been about; and plaintiff explained to defendant Martin that Phil Monde came in to tell plaintiff to

respond to a scene during plaintiff's meal break.; then defendant Martin stated that Mr. Monde came to tell plaintiff to respond at 11 as opposed to immediately.

20. Upon information and belief, on or about August 3, 2005, plaintiff was to have a private meeting with defendant Tony Carvagno in his office, but defendant Carvagno also had defendant Nicholas Mircovich present when the plaintiff arrived, and plaintiff was explaining to them about the situation that had happened the day before, and about the complaint that he had made against defendant Martin, and during the meeting, defendant Carvagno never mentioned to plaintiff that he defendant Carvagno was present when defendant Martin made the call over the PA radio for plaintiff to respond to Provost Cut when plaintiff was on his meal break; and that the only things defendant Carvagno wanted to talk about is whether plaintiff was having problem at home.

22. Upon information and belief, on or about August 10, 2005, plaintiff spoke again to defendant Carvagno because plaintiff had a previous discussion with defendant Jones about a Dictaphone tape of the radio call by defendant Martin, which defendant Carvagno assured plaintiff that he would secure the tape in his personal file located in his office and that he would try to settle the matter internally amongst the parties involved, but defendant Carvagno never did so and he only provided plaintiff a tape without the radio transmission on it.

23. Upon information and belief, on or about August 11, 2005, defendant Jones handed plaintiff paper work written by a duty manager Chris O'Halloran concerning the charges of rude and belligerent behavior by plaintiff for the incident that occurred on August 2, 2005, with the proposed penalty given to plaintiff, when in fact Mr. O'Halloran did not ask the plaintiff about his side of the story and that he spoke to Mr. Monde about the incident and that defendant Martin had then represented in her written

5

statement that her radio call was for plaintiff to report to the Provost Cut at 11 a.m. after plaintiff's break, which resulted in plaintiff getting 20 days suspension without pay on or about November 6, 2005.

24. Upon information and belief, prior to plaintiff's suspension, on or about September 8, 2005, plaintiff spoke to defendant Stephanie Lewis-Desire about everything that had transpired between defendant Martin and plaintiff, and plaintiff asked her to help him obtain a few PA's for his records and asked her abut the formalities for conducting an investigation.

25. Upon information and belief, Ms. Desire never did anything about plaintiff's complaint to her of sexual harassment and retaliation by defendant Martin.

26. Upon information and belief, on or about November 7, 2005, while eating lunch in the cafeteria, defendants Robert Eadiccico, Tony Carvagno, and other supervisors entered and sat across from plaintiff as they all were watching the NJ's governor's debate on the monitor and then defendant Eadiccico started shouting in a loud, abusive and repeatedly voice, "You fucking asshole" to the Holland Tunnel plant manager, when plaintiff had just received his suspension dates for allegedly using abusive and profane language.

27. Upon information and belief, on or about November 8, 2005, in the reserve room plaintiff witnessed duty manager Chris O''Halloran and TBA one participating in the distribution of lotto pool sheets among PA supervisors and that Mr. Monde had been observed, by plaintiff, taking considerable amount of tie off facility to buy lottery tickets which plaintiff provided copies of the lotto roster to the PA law department.

28. Upon information and belief, on or about December 28, 2005, plaintiff submitted a report about the sexual harassment, retaliation and hostile work

environment he was encountering to PA audit department, PA law department, and to superintendent and director of Tunnel and Bridges and to defendant Stephanie Lewis-Desire

29.     Upon information and belief, on or about June 23, 2006, at approximately 8 a.m., plaintiff was driving a PA vehicle when the seat slammed forward and caused the plaintiff to hit his chest hard against the steering wheel and getting his neck yoked by the shoulder strap of the seat belt; and immediately plaintiff called for assistance on PA radio stating that the vehicle was out of service.

30.     Upon information and belief, the plaintiff was then told by the desk person over the PA radio that two supervisors would respond; and around 10 minutes later, defendants Martin and Mircovich arrived on the scene, and plaintiff remained seated in the vehicle and told defendant Mircovich that he was injured; then defendant Mircovich immediately commanded plaintiff to step out of the vehicle; when plaintiff stepped out of the vehicle the defendant began moving the seat to the vehicle and told plaintiff that nothing was wrong with the seat.

31.     Upon information and belief, plaintiff continued to inform defendants that he was in pain and that there were problems with the seat; and defendants failed the standard protocol of the PA by not calling for immediate medical assistance and for vehicle inspection, and that defendant Mircovich continued to counter the plaintiff that the vehicle should not be out of service, while commanding that plaintiff remain standing in the roadway in the middle of traffic in physical pain.

32.     Eventually the defendants had another PA employee to drive the plaintiff to defendant's medical office, and upon information and belief, Dr. Kim at PA medical informed plaintiff that he should have been brought to a hospital by ambulance because of the extent of plaintiff's injury.

33. Upon information and belief, PA medical treated the plaintiff, prescribed him medication, and cleared him unfit for duty for one week; then for 7 more weeks.

34. Upon information and belief, while out on medical leave, the PA sent to plaintiff by certified mail that plaintiff had been charged with rude and aggressive behavior to defendants Martin and Micovich and was recommended to be terminated.

35. Upon information and belief, defendant Laurie Price, never requested a written accident report from the plaintiff; she only laughed about the matter when she was informed about it from defendant Mircovich, and both defendants did not believe that plaintiff was injured.

36. Upon information and belief, on or about November 16, 2006, plaintiff filed a charge of sexual harassment and retaliation with the NJ Division on Civil Rights, and by letter dated April 20, 2007, the U.s. Equal Employment Opportunity Commission, New York District Office, mailed plaintiff a right to sue letter.

37. Upon information and belief, on or about December 19, 2005, at approximately 7 a.m., plaintiff called over the PA radio that the driver's seat to the vehicle that he was driving was broken; then defendant Mircovich summoned plaintiff to come to defendant's office and provide defendant with the piece of material that was used to prop the driver's seat up; and then defendant Micovich told plaintiff to use another vehicle and proceed with his detail at post 4.

38. Upon information and belief, 2 hours later defendant Martin called plaintiff over the PA radio for him to call her extension; and when plaintiff called her she told him that he would be relieved of his position and to respond to NY because of the incident ith the vehicle that he reported; and then plaintiff responded that he had another vehicle, so defendant Martin told him to resume normal at post 4.

39. Upon information and belief, defendant Mircovich intercepted defendant's Martin's order for plaintiff to remain at post 4, and he told plaintiff to go to NY because

8

defendant eadiccio wanted plaintiff to be sent to NY at post 19, which was a post where plaintiff could be watched on camera and not be given the privilege to leave early as to what would have been permitted if he remained working an assigned detail.

    40.    Upon information and belief, on or about January 23, 2007, plaintiff was eating alone on his break in the PA cafeteria and had his equipment bag next to him at the table when defendant Tommy Smith entered the cafeteria and sat down at a table with defendants Eadiccico, Laurie Price, and other supervisors; the defendant Tommy Smith looked over and saw plaintiff eating at a table and approached and yelled to plaintiff to remove his bag from the table; then plaintiff explained to defendant that his is sitting at the table alone, not bothering anybody and that he will clean the table when he finish eating; then the defendant got louder and stood over the plaintiff and said he was ordering the plaintiff to remove his bag; then plaintiff pulled out a tape recorder and asked the defendant would he like to start over; then the defendant left and went to order food and returned to his seat with the other defendants and supervisors.

    41.    Upon information and belief, after the defendant Smith went back to the table where the other defendants and supervisors were sitting, defendant Smith then waited until after the other defendants left the cafeteria, the he went back over to the plaintiff, badgering the plaintiff for about 10 minutes for plaintiff to remove his bag from the table; then plaintiff told defendant Smith he was tired of being harassed, and plaintiff went to the phone to call the police and then defendant Smith left bfore the police arrived.

## AS AND FOR A SECOND CAUSE OF ACTION

    42.    The matters set forth in paragraph 1 through 41 are hereby repeated.

    43.    Upon information and belief plaintiff was then placed on medical leave for

9

two weeks after the incident with defendant Smith because of stress and plaintiff was having difficulty in breathing, but PA medical cleared to attend his disciplinary haring pertaining to the June 23, 2006 incident.

### AS AND FOR A THIRD CAUSE OF ACTION

44. The matters are set forth in paragraph 1 through 43 are hereby repeated.

45. Upon information and belief, the plaintiff was granted on May 31, 2006, by the arbitrator that defendants were directed to transfer the plaintiff to another facility as expeditiously as is possible, with plaintiff keeping all of his contractual rights and privileges.

46. Upon information and belief, on or about June 18, 2007, the plaintiff was informed by defendant Laurie Price that plaintiff was given 35 days suspension for the incident that took place on June 23, 2006, and for him to leave the facility immediately, and after making several demands for documentation about the suspension, plaintiff was handed a modified opinion and award from the arbitrator with changes that reads: "3. The respondent shall receive a 35 day suspension without pay,: and the transfer of the plaintiff had been taken out of the award.

### AS AND FOR A FOUTH CAUSE OF ACTION

45. The matters set forth in paragraph 1 through 44 are hereby repeated.

46. Upon information and belief, that as a result of defendants' action, the plaintiff has suffered and continues to suffer emotional harm, lost of pay.

WHEREFORE, plaintiff Frank Green demands judgment against the defendants as follows:

a) on the first cause of action in the amount of $300,000.00 for each'

b) on the second cause of action in the amount of $300,000.00 for each;

c) on the third cause of action in the amount of $300.000.00 for each;

        d)        on the third caus of action in the amount of $300,000.00 for each;

        f)        attorney fees;

        g)        costs and interest;

        h)        and such other and further relief in law and equity the Court deems just

Dated:        New York  
                July 19, 2005

                _____  
                Jaha C. Smith (JS1212)  
                JAHA C. SMITH & Associates  
                Attorneys for Plaintiff  
                1702 Amsterdam Avenue  
                New York, NY  10031  
                (212) 862-5922

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
```

Frank Green,

                          Plaintiffs,         VERIFICATION

    -against-

The Port Authority of New York and New Jersey,
Robert Eadicicco, Tony Caragno, Nicholas Mircovich,
Lela Martin, Cotea Jones, Laurie Price, Tommy Smith,
and Stephanie Lewis-Desire,

                          Defendants.
```
------------------------------------------------------------------------X
```

STATE OF NEW YORK    )
                               ) SS.:
COUNTY OF NEW YORK  )

      I, FRANK GREEN, being duly sworn depose, say:

      I am the Plaintiff named in the above entitled action, and we have read the Verified Complaint and know the contents thereof.  That the Verified Complaint is true to our knowledge, except as to matters alleged on information and belief, and that as to those matters we believe it to be true.

                                                          _____

                                                           FRANK GREEN

Sworn to before me on this
     day of July, 2007

_____
Notary Public